# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID CASTANIA | § | |
| | § | |
| V. | § | CASE NO. 4:13-CV-80 |
| | § | Judge Mazzant |
| WELLS FARGO BANK, N.A. d/b/a | § | |
| AMERICA'S SERVICING COMPANY | § | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Wells Fargo, N.A.'s Motion for Summary Judgment (Dkt. #25). The Court, having considered the relevant pleadings, finds that Defendant's Motion for Summary Judgment should be granted in part and denied in part.

## BACKGROUND

On or about February 25, 2000, Plaintiff David Castania executed an Adjustable Rate Note in favor of Norwest Mortgage, Inc. d/b/a Directors Acceptance in the original principal amount of $135,000 (the "Note"). To secure payment of the Note, a Deed of Trust was executed by Plaintiff. The Deed of Trust encumbered the property known as 221 Simmons Road, Double Oak, Denton County, Texas 75077 (the "Property").

On April 17, 2000, Norwest Mortgage, Inc. changed its name to Wells Fargo Home Mortgage, Inc. On May 8, 2004, Wells Fargo Home Mortgage, Inc. merged into its parent, Wells Fargo Bank, N.A. ("Wells Fargo"). On November 20, 2011, Wells Fargo assigned the Deed of Trust to JP Morgan Chase Bank, National Association, the Successor in Interest from the FDIC as Receiver of Washington Mutual Bank ("Chase"). Chase is the current owner and holder of the Note.

In late 2008, Plaintiff fell behind on his payments by failing to make the required monthly payment on the Note. In December 2009 Plaintiff was approved for a Home Affordable

Modification Program Loan Trial Period Plan. Plaintiff made all three trial payments. Plaintiff asserts that Wells Fargo represented to Plaintiff that if he made the payments under the trial modification plan, that it would then permanently modify his loan. The plan stated:

> I understand that the Plain is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification…I further understand and agree that Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

On May 28, 2010, Plaintiff was denied for a loan modification due to Wells Fargo's assertion that Plaintiff failed to send in requested information. Plaintiff did not understand how he could be un-approved after he had already been approved. Plaintiff asserted that he complied with all terms of the trial modification. Plaintiff continued to call Wells Fargo to seek further clarification.

On April 11, 2011, Wells Fargo and Plaintiff entered into a Temporary Forbearance Agreement. Plaintiff asserts that Wells Fargo, over the phone, represented to Plaintiff that if Plaintiff made all seven payments under the special forbearance agreement, he would receive the permanent modification that he was originally promised. As instructed, Plaintiff made all payments under the forbearance agreement beginning May 1, 2011. Wells Fargo concedes that Plaintiff made the payments under the agreement.

On or about November 6, 2011, Wells Fargo notified Plaintiff that he was in default pursuant to the Note and terms of the Deed of Trust. To cure the default, Plaintiff was required to pay $50,278.77 by December 6, 2011. Plaintiff did not make the payment.

On November 15, 2011, Plaintiff called Wells Fargo and spoke to one of its representatives named Henry. Henry confirmed that Plaintiff had made all payments under the special forbearance agreement. Henry informed the Plaintiff that his loan would now be submitted to underwriting so

that it could be permanently modified.

However, starting December 1, 2011, Wells Fargo would no longer accept Plaintiff's payments. Instead, Wells Fargo represented, without explanation, that Plaintiff had been removed from the special forbearance plan.

As it turns out, it was not until September of 2012 that the Plaintiff's loan was reviewed for a permanent modification. Soon thereafter, an issue arose regarding a lien for $707.30 placed on Plaintiff's property by the city of Double Oak, Texas, to secure payment for having his grass cut.

By letter dated October 27, 2012, Wells Fargo notified Plaintiff that final modification of his loan could not be completed due to "title issues" being present on the Property. Wells Fargo stated that a "notice of release of mortgage or discharge of judgment/lien recorded discharge of mortgage/satisfaction of record subordination agreement" would be needed to show there was no lien on the Property.

From September of 2012 through the end of that year, Plaintiff called Wells Fargo representative Taneka Ballard ("Ballard") and Wells Fargo often. Plaintiff called numerous times, leaving multiple messages hoping to get in touch with Ballard so that she might understand the situation. She never returned Plaintiff's phone calls.

On November 16, 2012, Wells Fargo notified Plaintiff again of additional documents needed, specifically:

> In order for Wells Fargo Home Mortgage to proceed with your final loan modification we need for you to provide documented proof that the title issue(s) has been resolved. Please provide requested documentation within ten (10) business days of the date of this letter or we will be required to deny your request for a modification of your loan.

Plaintiff has not provided documents to Wells Fargo evidencing the satisfaction of the liens on the

3

Property.

During this extended period of time in which Plaintiff was unable to get in touch with Ballard, Wells Fargo sent Plaintiff a letter on December 21, 2012, stating that Plaintiff did not qualify for the mortgage assistance program because Wells Fargo was unable to get in touch with Plaintiff and discuss his situation with him. This was said despite, as stated above, Plaintiff's continuously calling Wells Fargo and leaving voice mails to discuss his situation, the very same reason Wells Fargo was supposedly trying to reach him.

On or about December 21, 2012, Wells Fargo sent a letter to Plaintiff stating that he did not meet the requirements for the program due to Wells Fargo's being unable to reach him. The last payment on the Note was made in the amount of $1,449.52 on November 3, 2011. The Note is due for the October 2009 payment. The Note is in default and Plaintiff has not cured the default.

In January of 2013, Plaintiff was then contacted by a new representative, Cynthia Draper ("Draper"). This representative looked through Plaintiff's file and his prior application for the loan modification program. She stated that she could not find a reason why Plaintiff did not qualify for the permanent loan modification program or why he was given the forbearance rather than the modification. She also said there was no reason why his payments should have been rejected after the forbearance agreement was sent out. She also told him that the issue of the city having Plaintiff's grass cut should not have prevented the modification. Specifically, she stated that there was not a reason why he should be foreclosed on. On multiple occasions, she said the issue with the modification was an internal problem on the part of Wells Fargo, and that it was not a problem on the part of Plaintiff.

On or about January 8, 2013, Wells Fargo, through its foreclosure counsel, Barrett Daffin

Frappier Turner & Engel, LLP ("Barrett Daffin") mailed the Plaintiff certified letters notifying him that the Note had been accelerated and that the Property would be sold at a foreclosure sale held February 5, 2013.

On February 1, 2013, Plaintiff filed this lawsuit in state court asserting claims for violations of the Texas Debt Collection Act ("TDCA"), breach of contract, common law fraud, suit to quiet title, unreasonable collection efforts, negligent misrepresentation, negligent undertaking and request for attorney's fees. Wells Fargo has not conducted a foreclosure sale on the Property.

On November 6, 2013, Wells Fargo filed a motion for summary judgment (Dkt. #25). On December 9, 2013, Plaintiff filed a response (Dkt. #28). On January 14, 2014, Wells Fargo filed a reply (Dkt. #34). On January 23, 2014, Plaintiff filed a sur-reply (Dkt. #36).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

**Contract Claims**

The Court finds that Wells Fargo has not carried its initial burden of demonstrating Plaintiff's lack of evidence on an essential element of his contract claims. The motion for summary judgment is denied on the contract claims.

**Negligent Undertaking Claim**

Wells Fargo asserts that Plaintiff's negligent undertaking claim fails because he has not alleged any physical harm. Plaintiff asserts that physical harm is not a necessary element of this cause of action.

To state a claim for negligent undertaking, Plaintiff must demonstrate that Defendant: (1) undertook to perform services that it knew or should have known were necessary for Plaintiff's protection; (2) failed to exercise reasonable care in performing those services; and (3) performed the

6

services in a manner that increased Plaintiff's risk of harm. *Torrington v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2001). Contrary to Plaintiff's arguments, he must allege that some physical harm resulted from Wells Fargo's rendition of services. *Id.* (quoting Restatement (Second) of Torts § 323 (1965)); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976) (stating that one "who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby"). While Plaintiff argues that the Texas Supreme Court has never adopted the "physical harm" limitation in section 323 of the Restatement, the Fifth Circuit found that both the *Colonial* and *Torrington* panels adopted section 323. *Wentwood Woodside I, LP v. GMAC Comm. Mortg. Corp.*, 419 F.3d 310, 319 (5th Cir. 2005). Plaintiff must show damages to recover for any tort, and under Texas case law, the damage for this tort must be physical harm to either a person or property. Because Plaintiff fails to offer any evidence that shows that he or his property suffered any physical harm, as opposed to pecuniary damages, his negligent undertaking claim fails and is dismissed.[1]

**Other Claims**

Plaintiff fails to respond to Wells Fargo's request for summary judgment on the violations of the TDCA, common law fraud, suit to quiet title, unreasonable collection efforts, and negligent misrepresentation. Wells Fargo has met its burden on summary judgment on these claims, and Plaintiff fails to respond to these arguments. These claims are dismissed.

---

[1] Although the decision is unpublished and not precedential, the Fifth Circuit recently upheld the dismissal of a negligent undertaking claim in the foreclosure context because the plaintiffs alleged no physical harm. *See James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 448 (5th Cir. 2013).

7

**Attorney's Fees**

Since this case will proceed to trial, the issue of attorney's fees will be addressed at a later date.

It is therefore **ORDERED** that Defendant Wells Fargo, N.A.'s Motion for Summary Judgment (Dkt. #25) is hereby **GRANTED** in part and Plaintiff's claims for violations of the Texas Debt Collection Act, common law fraud, suit to quiet title, unreasonable collection efforts, negligent misrepresentation, and negligent undertaking are **DISMISSED**. The motion is **DENIED** as to the Plaintiff's contract claims.

**SIGNED this 9th day of April, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE